**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FEDERAL
(ABERDEEN DIVISION)**

| | | |
|---|---|---|
| **FEDERAL NATIONAL** | ) | |
| **MORTGAGE ASSOCIATION,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Case No.: 1:17-cv-00170-DAS** |
| | ) | |
| **BROOKVILLE SCHOOLHOUSE** | ) | |
| **ROAD ESTATES, LLC,** | ) | |
| | ) | |
| **Defendant.** | ) | |

_____

**PLAINTIFF'S MOTION *IN LIMINIE* TO EXCLUDE DEFENDANT'S PROPOSED
EXPERT WITNESS, JEFFREY S. ROTHBART**

_____

**COMES NOW** the Plaintiff, Federal National Mortgage Association ("Fannie Mae"), and moves this Court under Federal Rules of Evidence 702 and 403 for an Order excluding the opinions and testimony of Plaintiff's proposed expert witness, Jeffrey S. Rothbart ("Rothbart"), in their entirety. In support thereof, Fannie Mae states as follows:

## I. BACKGROUND

Defendant seeks to introduce at trial the opinions of Mr. Rothbart, an attorney and purported "experienced real estate executive" who claims to have expertise in real estate, taxation and securities law. The opinions to be expressed by Mr. Rothbart are contained in his *Summary of Expert Opinion*, dated February 20, 2019, a copy of which is attached hereto and incorporated herein by reference as **Exhibit "A"** (the "Report").

Even a cursory review of the Report will quickly reveal that Mr. Rothbart's opinions are limited solely to advocating Defendant's legal arguments, in the form of offering conclusions as to the ultimate issues of law that are presented by this case. (Exhibit "A", at 14; 17; 18; 19-21).

1

4833-3437-4294v2
2903115-000043

In sum and substance, Mr. Rothbart's opinions are that Defendant 1.) is not in breach <u>any</u> of the contractual obligations that Defendant owes to Fannie Mae and 2.) that in seeking to compel Defendant to deposit additional monetary amounts into the property repair escrow account, Fannie Mae has breached "principals of good faith and fair dealing or customary industry practice" that it owed to Defendant. (Exhibit "A", at 17-18).

In addition to merely offering conclusions of law as to ultimate issues that should be reserved for this Court to decide, Mr. Rothbart's opinions are also irrelevant and not helpful to the trier of fact. Specifically, the conclusions in his Report are not based on a substantive analysis of the Loan Documents at issue but, rather, are based on purported general (and undefined) "accepted industry practice" that Mr. Rothbart claims to be knowledgeable regarding. As to the legal conclusion of an absence of "good faith" by Fannie Mae, such is made by Mr. Rothbart based on his alleged knowledge of general "principals of good faith and fair dealing"; his opinions are not alleged to be based on any substantive Mississippi law that would govern this legal issue.

As mere opinions concerning ultimate issues of law that fall squarely within the sole province of this Court to decide, compounded by not being based on the actual substantive terms and conditions of the Loan Documents that are at issue in this case, neither Mr. Rothbart's proposed trial testimony nor his Report are admissible into evidence and should be excluded in their entirety.

2

## II. <u>LEGAL STANDARD</u>

Federal Rule of Evidence 702 allows for expert testimony that assists the trier of fact to understand the evidence or to determine a fact at issue. Rule 702 provides as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

The United States Supreme Court has instructed the trial courts to serve a gatekeeping function to determine whether expert testimony should be presented to the trier of fact. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 590-93 (1993). This gatekeeping function is to insure that such expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).

The party offering the expert's testimony must prove by preponderance of the evidence that: (1) the expert is qualified; (2) the testimony is relevant to an issue in the case; and (3) the testimony is reliable. *Daubert*, 509 U.S. at 590-91. "This gatekeeping function applies to all types of expert testimony, not just scientific testimony." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002) (citing *Kumho*, 526 U.S. at 147). The proposed expert testimony must be both **relevant** and **reliable**. *Id*. In determining whether to admit or exclude expert testimony, a court may consider the particular circumstances underlying the testimony at issue. *See Kumho*, 526 U.S. at 150-51. And the decision to allow or exclude experts from testifying is within the

4833-3437-4294v2
2903115-000043

sound discretion of the district court. *St. Martin v. Mobil Exploration & Producing U.S., Inc.*, 224 F.3d 402, 405 (5th Cir. 2000).

To be relevant, expert testimony must "assist the trier of fact to understand the evidence or to determine a fact in issue." FED. R. EVID. 401, 702; *Daubert*, 509 U.S. at 591 ("Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful."). Expert testimony is irrelevant and unnecessary when the trier of fact can "adeptly assess the situation using only [its] common experience and knowledge." *Welch v. Nobel Drilling (U.S.), Inc.*, No. 04-2689, 2005 U.S. Dist. LEXIS 45875, at *2–3 (E.D. La. Dec. 7, 2005) (quoting *Peters v. Five Star Marine Serv.*, 898 F.2d 448 (5th Cir. 1990)).

The reliability inquiry requires the Court to assess whether the reasoning or methodology underlying the expert's testimony is valid. *Daubert*, 509 U.S. at 589. "The aim is to prevent expert testimony based merely on subjective belief or unsupported speculation." *Burst v. Shell Oil Co.*, 120 F. Supp. 3d 547, 550 (E.D. La. 2015) (citing *Daubert*, 509 U.S. at 590); *see also Ladnier v. REC Marine Logistics, LLC*, No. 14-1278, 2016 U.S. Dist. LEXIS 39548, at *4 (E.D. La. Mar. 25, 2016). Further, expert testimony is not reliable where it is based on "experience alone." *Tajonera v. Black Elk Energy Offshore Operations, LLC*, No. 13-0366, 2016 U.S. Dist. LEXIS 40416, at *73 (E.D. La. Mar. 28, 2016) (citing *Brown v. Illinois Cent. R. Co.*, 705 F.3d 531, 536 (5th Cir. 2013)).

The Fifth Circuit often reminds district courts of their important gatekeeping function to ensure that proffered expert testimony is both relevant and reliable. *See Carlson v. Bioremedi Therapeutic Sys.*, 822 F.3d 194, 199 (5th Cir. 2016). The gatekeeping function includes ensuring that the expert is not merely "an advocate of policy before the jury." *Hudson Henley Grp. v. Love Ins. Grp., LLC*, No. 3:15-CV-3078-L, 2018 U.S. Dist. LEXIS 57297, at *9 (N.D. Tex. Apr.

4

4, 2018) (citing *In re Air Crash Disaster at New Orleans, La.*, 795 F.2d 1230, 1233 (5th Cir. 1986)). To this end, district courts must "insist that a proffered expert bring to the jury more than the lawyers can offer in argument." *In re Air Crash Disaster at New Orleans, La.*, 794 F.2d at 1233.

Rule 403 provides that the court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FED. R. EVID. 403. Furthermore, the Fifth Circuit has consistently held that an expert may not render conclusions of law. *Snap-Drape, Inc. v. C.I.R.*, 98 F.3d 194, 198 (5th Cir. 1996); *see also Goodman v. Harris County*, 571 F.3d 388, 399 (5th Cir. 2009) ("An expert may never render conclusions of law."); *Owen v. Kerr--McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983) ("allowing an expert to give his opinion on legal conclusions to be drawn from the evidence both invades the court's province and is irrelevant."). While the rules of evidence allow an expert to give opinions that "embrace an ultimate issue to be decided by the trier of fact", FED. R. EVID. 704(a), an expert may not offer opinions that amount to legal conclusions. *C.P. Interests, Inc. v. Cal. Pools, Inc.*, 238 F.3d 690, 697 (5th Cir. 2001).

## III. <u>ARGUMENT</u>

Defendant's expert offers twenty-one (21) conclusions at the end of his Report, all of which are irrelevant, unreliable and/or are conclusions as to ultimate issues of law (thereby invading the province of the Court). (Exhibit "A", at 19-21). Based on his Report it appears that Mr. Rothbart plans to opine that the Defendant is not in default of any contractual obligation owed to Fannie Mae, and has acted reasonably and in good faith with respect to the repair and maintenance of the apartment complex property at issue. (Exhibit "A", at 19-20). Yet, Mr.

5

Rothbart fails to incorporate into his opinions any analysis of the specific provisions of the Loan Documents that the Parties have stipulated govern the disputed issues in this case.

Mr. Rothbart's legal conclusions are not helpful to the Court, as the Court is perfectly capable of evaluating the relevant evidence (i.e. the Loan Documents and evidence of property condition during the relevant time frame) and making its own determination as to whether Defendant has breached contractual obligations owed to Fannie Mae. Further, Mr. Rothbart should not be permitted to offer an opinion that utterly fails to address the governing contractual agreements in this case (i.e., the Loan Documents).

As an example of the deficiencies in his opinion, Mr. Rothbart opines in his first conclusion that "Brookville has at all times made each and every principal, interest, tax, insurance or reserve replacement escrow payments. Therefore, no monetary default under the Loan Documents occurred (nor has Fannie Mae asserted any exist)." (Exhibit "A", at 19). Fannie Mae submits that there exist at least three (3) problems with this opinion that pervade the entire Report.

First, there is a large gap between Mr. Rothbart's opinion and the purported basis for the opinion: nowhere in the Report does Defendant's expert indicate he has reviewed Defendant's financial books and records or payment history, yet he willingly opines about payment status. (Exhibit "A", at 2-3) (listing documents reviewed). Second, there is a clear factual or logical error regarding Mr. Rothbart's assertion that all reserve and replacement escrow deposits have been made by Defendant (in that it is precisely the absence of such escrow deposits that forms the factual basis for this litigation). (Amended Complaint [Dkt. #25], at ¶¶20-22). Third, the opinion is a legal conclusion: opining that "no monetary default under the Loan Documents occurred" is a conclusion of contract law. *See Holman Enters. v. Fidelity & Guar. Ins. Co.*, 563

6

F. Supp. 2d 467, 472 (D.N.J. 2008) (excluding expert whose "major thesis" was that one party did not breach the covenant of good faith and fair dealing, noting such an opinion "is an obvious conclusion of law inappropriate for an expert report."). Similar deficiencies pervade the entire Report.

## A.    Relevancy and Reliability

Fannie Mae brings this action to enforce its contractual rights under the Loan Documents, based on Defendant's failure to make necessary repairs to and/or failure to tender certain repair-related monetary deposits into escrow for the benefit of the apartment complex property at issue. In its Answer [Dkt. #28, at ¶¶ 8 - 18], Defendant admits that it entered into the loan that is evidenced by the Loan Documents. Further, in its Motion seeking to enjoin foreclosure [Dkt. #26, at 6], Defendant states that it "does not dispute its obligations under the Loan Agreement."

No fewer than ten (10) times in his conclusions, Defendant's purported expert opines that the Defendant has acted entirely within its legal rights; has fulfilled all of its legal obligations; and has not defaulted in any contractual duty owed to Fannie Mae (Exhibit "A", at 19-20), yet nowhere in the Report does Mr. Rothbart cite to, discuss or analyze any specific provision of the contractual agreements (i.e. the Loan Documents) that are at issue in this litigation. Rather, Defendant's expert resorts to general (and often illogical) conclusory statements that appear to disregard the parties' specific contractual rights and obligations set forth in the Loan Documents. Such generalized conclusory opinions are neither relevant nor helpful to this Court.

For example, Mr. Rothbart opines that when a lender declares a borrower in default it is "typically" for "material defaults" such as failure to make payments when due, failure to pay taxes or insurance, allowing liens against the property, and similar acts. (Exhibit "A", at 17). Mr. Rothbart then further opines that "common sense would dictate that a 'failure to maintain'

7

alleged breach *may be an area where a lender could exhibit some forbearance, reasonableness, and cooperation*, especially when presented with a reasonable request.  That did not occur." (Exhibit "A", at 17) (emphasis added).  Notably missing, however, from this conclusory statement is any analysis of the specific provisions of the governing Loan Documents in this case: such contractual agreements control the nature and extent of Defendant's obligation to make repairs to the property and/or tender additional property repair reserve account deposits when Fannie Mae makes demand for same.

Moreover, it is difficult to understand why Defendant needs an expert to testify as to matters of alleged (and undefined) "common sense."  To the contrary, controlling precedent establishing this Court's "gatekeeper" function mandates that the Court "insist that a proffered expert bring to the jury *more than the lawyers can offer in argument*."  *In re Air Crash Disaster at New Orleans, La.*, 794 F.2d at 1233 (emphasis added).  In his Report, however, Mr. Rothbart does nothing more than offer the same legal arguments and conclusions that Defendant's counsel has espoused throughout the life of this case.

Mr. Rothbart also offers irrelevant opinions as to Fannie Mae's status as a secured lender, opining that the apartment complex's market value (coupled with assumed-to-exist repair reserve escrow funds) render Fannie Mae fully secured (Exhibit "A", at 20, ¶¶ 7, 15 and 16), suggesting that Fannie Mae should not, therefore, be able to enforce the provisions of the Loan Documents that relate to Defendant's duty to repair and maintain the Property.  Such opinions are unreliable in that they fail to consider the Parties' agreed-upon contractual obligations (which are not contingent upon the property's market value or the extent of Fannie Mae's secured lender status) and,  instead, imply that Fannie Mae is precluded from enforcing the property maintenance terms and conditions of the Loan Documents so long as it remains fully secured based on the overall

8

value of its collateral for the Loan. Such conclusions of law wholly ignore the specific Loan Document provisions that are designed to ensure that the apartment complex is maintained in good condition for the benefit of the tenants who reside therein.

In addition to being unhelpful and irrelevant, Mr. Rothbart's opinion are unreliable as he makes several unsupported leaps of logic in reaching his conclusions. For example, Mr. Rothbart opines that if the apartment complex has increased in market value since the Loan was originated, it must have been properly maintained. (Exhibit "A", at 19, ¶5). For a supposed expert in commercial real estate to reduce property valuation to a single-factor analysis (completely ignoring the potential effects of a rising commercial property market) demonstrates a significant question of reliability. Similarly, Mr. Rothbart's repeated declaration that the Defendant has not defaulted on any of its contractual obligations to Fannie Mae, without any reference to or discussion of the relevant provisions of the controlling Loan Documents, demonstrates a severe lack of methodology underlying his conclusions.

**B.**   **Legal Conclusions**

While a district court enjoys broad discretion in determining admissibility of evidence, "that discretion is dramatically narrowed where a party seeks to admit expert testimony purporting to offer legal conclusions, and where a party seeks to admit expert testimony which effectively tells the jury what result to reach. The first type of testimony would impermissibly invade the province of the Court, and the second type would impermissibly invade the province of the jury." *Travelers Indemnity Co. of Ill. v. Royal Oak Enterprises, Inc.*, 2004 WL 3770571, at *2 (M.D. Fla. Aug. 20, 2004).

9

A fair reading of Mr. Rothbart's Report reveals that, in sum and substance, it offers nothing more than unsupported opinions that Defendant is not in breach of any contractual obligation owed to Fannie Mae, with all such opinions being conclusions of law that are properly reserved for the Court to decide. In addition, Mr. Rothbart offers multiple opinions on the creditability of the AEI Reports (Exhibit "A" at 20, ¶9), the good faith of the Defendant (Exhibit "A" at ¶18), and the lack of good faith by Fannie Mae (Exhibit "A" at 20,¶¶ 12-14; 17), again, all of which are matters for the Court to decide. *Holman Enters.*, 563 F. Supp. 2d at 472.

## CONCLUSION

Based on the foregoing law and argument, Fannie Mae respectfully submits that its Motion should be granted, so that Defendant's purported expert witness, Jeffrey S. Rothbart, is precluded from offering any testimony at trial and Defendant precluded from introducing Mr. Rothbart's Report into evidence or otherwise utilizing the Report for any other purpose in this litigation.

Respectfully submitted, this the 7th day of May, 2019.

> FEDERAL NATIONAL MORTGAGE
> ASSOCIATION
>
> By its attorneys,
>
> BAKER, DONELSON, BEARMAN
> CALDWELL & BERKOWITZ, PC
>
>
> By: */s/ Alan L. Smith*
> Alan L. Smith, Esq. (MS Bar No. 10345)

10

 **SUBMITTED BY:**


*/s/ Alan L. Smith*
Alan L. Smith, Esq. (MS Bar No. 10345)
BAKER, DONELSON, BEARMAN
  CALDWELL & BERKOWITZ, PC
Alan L. Smith, Esq. (MS Bar No. 10345)
One Eastover Center
100 Vision Drive, Suite 400
Jackson, MS 39211
Telephone:     (601) 351-8932
Facsimile:      (601) 974-8932
asmith@bakerdonelson.com

*Counsel for Federal National Mortgage Association*

4833-3437-4294v2
2903115-000043

## <u>CERTIFICATE OF SERVICE</u>

I, Alan L. Smith, do hereby certify that on this day the foregoing paper was filed electronically with the Clerk of the Court using the Court's ECF system, which served a true and correct copy of such paper electronically on all parties enlisted to receive service electronically as of the date hereof, including the following:

S. Joshua Kahane, Esq.
JKahane@Glankler.com

THIS, the 7th day of May, 2019.

*/s/ Alan L. Smith*
_____
Alan L. Smith, Esq. (MS Bar #10345)

4833-3437-4294v2
2903115-000043